UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

04  10599 RWZ

IDENIX PHARMACEUTICALS, INC. and    )
JEAN-PIERRE SOMMADOSSI, Ph.D.    )
    )
    Plaintiffs,    )
    MAGISTRATE JUDGE _____
    )
v.    )
    )    CIVIL ACTION NO.
    )    CV____-____   RECEIPT # 54875
THE UAB RESEARCH FOUNDATION,    )    AMOUNT $ 150
    )    SUMMONS ISSUED YES
    Defendant.    )    LOCAL RULE 4.1
    )    WAIVER FORM
    )    MCF ISSUED
    )    BY DPTY. CLK. T.O.M
    )    DATE 3/29/04

VERIFIED COMPLAINT

Plaintiffs Idenix Pharmaceuticals, Inc. and Jean-Pierre Sommadossi bring this action

seeking a declaratory judgment as to the rights of the parties in certain intellectual property, as

well as monetary relief for conduct in which the defendant, The UAB Research Foundation, has

already engaged.

**Allegations Applicable to All Counts**

1.    Plaintiff Idenix Pharmaceuticals, Inc. ("Idenix") is a Delaware corporation with its

principal place of business in Cambridge, Massachusetts.  Idenix is in the business of researching

and developing treatment modalities for infections caused, in particular, by the hepatitis B virus

("HBV"), the hepatitis C virus ("HCV"), and the human immunodeficiency virus ("HIV").

2.    Plaintiff Jean-Pierre Sommadossi, Ph.D. ("Dr. Sommadossi") is an individual

who resides and is employed in Cambridge, Massachusetts.

3.    Defendant The UAB Research Foundation ("UABRF") is an Alabama corporation with its principal place of business in Birmingham, Alabama. UABRF is affiliated with The University of Alabama at Birmingham ("UAB").

4.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the property rights at issue include intellectual property rights governed by federal law (although this is not a suit to enforce a patent right), and under § 1332 by virtue of the parties' diversity of citizenship and because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. This Court has personal jurisdiction over the defendant because a substantial portion of the events giving rise to this controversy occurred in Massachusetts and a substantial part of the property that is the subject of this action is situated in Massachusetts. Venue is properly situated in this district because the corporate plaintiff has its principal place of business here, and the individual plaintiff resides and works here.

5.    Dr. Sommadossi was employed by The University of Alabama at Birmingham ("UAB") beginning March 1, 1985. He conducted research relating to HBV and HIV and was a professor in UAB's Department of Pharmacology & Toxicology. Dr. Sommadossi's research did not relate to HCV.

6.    In May, 1998, Dr. Sommadossi, in conjunction with others, founded Novirio Pharmaceuticals Limited, which later became known as Idenix.

7.    At some point before April 1, 1999, Dr. Sommadossi notified the Chairman of the Department of Pharmacology & Toxicology, Dr. Robert Diasio, and one other of his UAB faculty colleagues, that he intended to resign his position at UAB and take on full time employment at his newly formed biotech company Novirio, as Novirio's Executive Chairman and lead researcher. Dr. Sommadossi informed Dr. Diasio that he did not intend to return but

- 2 -

was concerned about the impact on graduate students and assistants whose salaries were paid by grants. Dr. Diasio suggested that Dr. Sommadossi take a sabbatical instead of resigning.

8.    In conjunction with the sabbatical in lieu of resigning, Dr. Diasio informed Dr. Sommadossi that the Department of Pharmacology & Toxicology did not have UAB state funds available to pay the stipend (fifty percent of salary) associated with a traditional UAB sabbatical, but that he would agree to disbursement of non-UAB non-government funds to provide the stipend to Dr. Sommadossi during his sabbatical. These funds had been previously amassed by Dr. Sommadossi and held in a separate grant account at UAB. UAB's only involvement with these funds was in its capacity as a fund administrator.

9.    Dr. Sommadossi's sabbatical was approved with the explicit acknowledgement of the Department Chairman, and, on information and belief, the Dean of the School of Medicine, the Provost, and the President of UAB,   (a) that he would be taking a sabbatical unsupported by UAB funds and (b) that he would be employed by Novirio as a full-time researcher and executive during such sabbatical and conducting research in Massachusetts, Italy and France.

10.    On November 1, 1999 Dr. Sommadossi officially started his sabbatical.

11.    It was Dr. Sommadossi's expectation, and, on information and belief, Dr. Diasio's expectation, that beginning with the commencement of the sabbatical period, Dr. Sommadossi would be contractually obliged to assign to Novirio any inventions he might make within the scope of his work at Novirio, and that Dr. Sommadossi's obligations to assign any rights he might have in intellectual property arising from his work at Novirio would be absolute and superior to any claim of UAB.

12.    As the Department Chairman, Dr. Diasio was the UAB agent with actual and/or apparent authority to determine on behalf of UAB the terms of the sabbatical.   On information

and belief, Dr. Diasio did not expect that UAB or UABRF would have any intellectual property rights in any inventions made by Dr. Sommadossi during his sabbatical.

13.    During his employment at Novirio, and later Idenix, Dr. Sommadossi did not receive UAB support for his research on behalf of Novirio/Idenix.   Rather, his research was funded by Novirio, and later Idenix.

14.    During his employment at Novirio, and later Idenix, Dr. Sommadossi's research was performed at Novirio/Idenix facilities, or facilities of entities other than UAB with which Novirio/Idenix collaborated, in Cambridge, Massachusetts, Montpelier, France, and Cagliari, Italy.

15.    UAB representatives encouraged Dr. Sommadossi with regard to his efforts on behalf of Novirio, and later Idenix, on information and belief because such work had important public health ramifications.  At no time did any UAB or UABRF representative suggest to Dr. Sommadossi or to Novirio or Idenix that UAB or UABRF had any claim to, or ownership rights in, new inventions made by Dr. Sommadossi during his sabbatical.

16.    On November 1, 2000, Dr. Sommadossi changed his formal status with UAB by converting from a sabbatical to an unpaid leave of absence, with an initial end date of October 31, 2001.  At the request of Dr. Diasio, Dr. Sommadossi did not resign.  During this leave of absence, Dr. Sommadossi continued to be a full time employee of Idenix, with his principal place of employment in Massachusetts.

17.    In October of 2001, Dr. Sommadossi's unpaid leave of absence was extended until October 31, 2002, again at the request of Dr. Diasio.  During this time, Dr. Sommadossi remained a full-time employee of Idenix, with his principal place of employment in Massachusetts.

- 4 -

18.     During Dr. Sommadossi's employment by Idenix, Dr. Sommadossi utilized

technology and funding from Idenix to engage in research relating to the development of drugs

for the treatment of HBV, HCV, HIV and hepatitis delta virus ("HDV").  Although

Dr. Sommadossi engaged in research at UAB relating to the discovery of therapeutics for the

treatment of HBV and HIV prior to initiating his sabbatical leave, Dr. Sommadossi disclosed the

results of such research to UAB and UABRF and in accordance with the employment policies

applicable to full time faculty using UAB facilities and resources to conduct their researh,

assigned such discoveries and inventions to UABRF.   Research and discoveries made prior to

the commencement of Dr. Sommadossi's sabbatical are not at issue in this litigation.

Dr. Sommadossi's research for Idenix was performed in conjunction with others at Idenix in

Massachusetts, at the Universita Degli Studi Di Cagliari in Cagliari, Italy, and at the University

of Montpellier II, in Montpellier, France.  Dr. Sommadossi and his colleagues made discoveries

for which patents were sought and applications are pending.

19.     During the sabbatical period, from approximately November 1, 1999 until

November 1, 2000, Dr. Sommadossi and his colleagues, researched, made discoveries and filed

patent applications or provisional patent applications pertaining to treating HDV infections

(IDX1004), methods and compositions for treating flaviviruses and pestiviruses (IDX1006), and

methods and compositions for treating HCV (IDX1007).

20.     During the unpaid leave of absence period, from approximately

November 1, 2000 until October 31, 2002, Dr. Sommadossi and his colleagues, researched, made

discoveries and filed patent applications or provisional patent applications pertaining to

phenylindoles for the treatment of HIV (IDX1008), methods for inhibiting the transmission of

HIV using topically applied substituted 6-Benzyl-4-Oxopyrimidines (IDX1009),  methods and

- 5 -

compositions for treating HCV with 4'-modified nucleosides (IDX 1013), methods and
compositions for treating flaviviruses and pestiviruses with 4' branched nucleosides (IDX1014),
methods and compositions for treating HCV (IDX1015), methods and compositions for treating
flaviviruses and pestiviruses (IDX1016), 2' and 3' nucleoside prodrugs for treating HCV
(IDX1017), modified 2' and 3' nucleoside prodrugs for treating HCV (IDX1018), substituted
phenylindoles for the treatment of HIV (IDX1020)and beta-L-2'deoxy-nucleosides for the
treatment of Lamuvidine resistant HBV (IDX1021) (the applications in Paragraphs 19 and 20,
collectively "the Patent Applications").

21.    None of the foregoing discoveries was made in whole or in part in Alabama, nor
were any UAB facilities employed.

22.    Consistent with his employment relationship with Novirio/Idenix,
Dr. Sommadossi assigned his interest in the Patent Applications to Novirio or Idenix. Such
assignments were requested by Novirio/Idenix and executed by Dr. Sommadossi.

23.    Beginning in or about November of 2001, the Patent Applications were published.

24.    Although fully informed of Dr. Sommadossi's and Novirio/Idenix's research and
discoveries relating to HCV, HBV and HIV, neither UAB nor UABRF suggested to
Dr. Sommadossi or Idenix that UAB or UABRF claimed any rights to Dr. Sommadossi's HCV,
HBV and HIV discoveries, until the following events occurred: Idenix engaged underwriters,
filed a registration statement with the Securities and Exchange Commission, and publicly
announced its intention to proceed with a public offering of its common stock. The value of such
stock is adversely affected by any uncertainties pertaining to the Patent Applications. Such
adverse effect could be substantial. Shortly after Idenix's filing and announcement, in
December, 2003, UABRF asserted for the first time that it was entitled to the fruits of the labor

undertaken by Dr. Sommadossi and his colleagues during the period from November 1, 1999, the date he commenced his sabbatical leave, until November 1, 2002, when he officially resigned from UAB.

25.    In January, 2004, with full knowledge of Idenix's approaching initial public offering, UABRF demanded that Dr. Sommadossi assign his rights in the Patent Applications, together with any associated derivative ("daughter") applications and any patents issued or to be issued therefrom to UABRF.  The basis for UABRF's claim was, and is, that Dr. Sommadossi's employment with UAB continued throughout his sabbatical and unpaid leave of absence,  and that UAB's Patent Policy entitled UABRF to the ownership of any patents developed in that "employment" period.  On information and belief, if and to the extent UAB's Patent Policy even arguably applies to individuals on sabbatical or unpaid leave of absence, neither UAB nor UABRF has sought to enforce UAB's Patent Policy in the past with regard to other scientists and researchers on sabbatical or other leave of absence or in connection with any consulting work undertaken and performed while apart from the university.  On information and belief, in contrast with past practice, UABRF is attempting to selectively enforce the Patent Policy in this instance purely for financial gain, and without regard for the best interests of the members of the public who could ultimately benefit from Dr. Sommadossi's and Idenix's discoveries and research.

COUNT ONE

Declaratory Judgment

26.    The Plaintiffs incorporate by reference paragraphs 1 through 25 as if set forth here in their entirety.

27.    This count for declaratory relief is brought pursuant to 28 U.S.C. § 2201.

28.    An actual, bona fide controversy of a justiciable nature exists between the parties and is ripe for judicial determination regarding ownership rights in Dr. Sommadossi's research and discovery activities and efforts undertaken during the period form November 1, 1999 to November 1, 2002 . Dr. Sommadossi's interest in the Patent Applications, together with any daughter applications and any patents issued or to be issued pursuant to the Patent Applications, has been assigned to Idenix. UABRF now claims ownership of the same and has demanded that Dr. Sommadossi assign to UABRF that which he has already assigned to Idenix.

29.    Idenix and Dr. Sommadossi seek a declaration that (a) all right, title, and ownership interest that Dr. Sommadossi possessed in the Patent Applications together with any associated daughter applications and any patents issued or to be issued in the future pursuant to the Patent Applications, have lawfully been transferred in their entirety to Idenix, and (b) except for Idenix, no other party, including but not limited to UABRF, purporting to claim any right, title, or ownership interest in the Patent Applications, together with any associated daughter applications and any patents issued or to be issued in the future pursuant to the Patent Applications, through or on account of Dr. Sommadossi, has any such right, title, or ownership interest.

COUNT TWO

Intentional Interference with Contractual Relationship (Idenix v. UABRF)

30.    The Plaintiffs incorporate paragraphs 1 through 29 as if set forth here in their entirety.

31.    UABRF is fully aware of the contractual relationship between Idenix and its employee Dr. Sommadossi. UABRF is also fully aware that Dr. Sommadossi, whose research and discoveries leading to the Patent Applications were accomplished using the resources and

- 8 -

facilities of his employer Idenix, has assigned all of his right, title, and ownership interest in the

Patent Applications to Idenix.

32.    UABRF has nonetheless made demand upon Dr. Sommadossi to transfer the same

right, title, and ownership interest in the Patent Applications to UABRF. UABRF has done so

knowing that Dr. Sommadossi could only effectuate such a transfer by seeking to repudiate the

transfer of the same intellectual property rights that he has already made to Idenix. Hence,

Dr. Sommadossi can only acquiesce in the conduct demanded of him by UABRF if he reneges

on his contractual assignment to Idenix.

33.    UABRF's conduct as described herein has been undertaken for UABRF's

economic gain, and not for any appropriate research or charitable purpose. Such conduct has

been intentional and without legal justification and therefore constitutes wrongful interference

with Idenix's contractual relationship with Dr. Sommadossi.

COUNT III

Intentional Interference with Actual and<br>Prospective Advantageous Relations (Idenix v. UABRF)

34.    The Plaintiffs incorporate by reference paragraphs 1 through 33 as if set forth here

in their entirety.

35.    In connection with the initial public offering described herein, Idenix has actual

advantageous relations with its underwriters, and prospective advantageous relations with

investors.

36.    Throughout the period when Idenix was expending its resources, and

Dr. Sommadossi his efforts, on research leading to important discoveries regarding the treatment

of hepatitis C, hepatitis B and HIV, UAB and UABRF encouraged and applauded such efforts,

without once suggesting that a claim of ownership to the fruits of these endeavors would be

- 9 -

made. Only when Idenix had filed a registration statement and an initial public offering was imminent did UABRF step forward in January, 2004 and make demands upon Dr. Sommadossi. The timing of such demands has the effect of forcing the plaintiffs either to acquiesce in the demands, or face the risk that the initial public offering could occur on materially less favorable terms, or not at all.

37.    UABRF's conduct as described herein has been undertaken for UABRF's economic gain, and not for any appropriate research or charitable purpose. Such conduct has been intentional and without legal justification and therefore constitutes wrongful interference with Idenix's actual and prospective advantageous relations with underwriters and investors.

COUNT IV

Violations of M.G.L. c. 93A

38.    The Plaintiffs incorporate paragraphs 1 through 38 as if set forth here in their entirety.

39.    The Plaintiffs and the Defendant are all persons or entities engaged in trade or commerce within the meaning of Massachusetts General Laws, c. 93A. The conduct of the Defendant UABRF about which the Plaintiffs complain all, or substantially all, occurred within Massachusetts and relates to business or commerce in Massachusetts.

40.    UABRF's conduct as more fully described above constitutes unfair or deceptive acts or practices causing monetary damage to Idenix by interfering with Idenix's efforts to proceed with its initial public offering, and/or by adversely affecting the terms on which such initial public offering may proceed. Such unfair or deceptive acts or practices include, without limitation:

a.    Remaining silent while Idenix expended resources and Dr. Sommadossi expended his time and efforts on the research leading to the Patent Applications,

- 10 -

expressly and implicitly leading Dr. Sommadossi and Idenix to believe that UAB and UABRF took no issue with Dr. Sommadossi's efforts for the economic benefit of Idenix;

b.      Stepping forward to demand intellectual property rights in the fruits of Dr. Sommadossi's labor while employed by Idenix, only when the initial public offering had been publicly announced and was imminent; and

c.      On information and belief, timing the demand for intellectual property rights at a critical and sensitive point that would leave Dr. Sommadossi and Idenix few options but to acquiesce, or risk a material adverse impact on, or aborting of, the initial public offering.

WHEREFORE, plaintiffs Idenix Pharmaceuticals, Inc. and Jean-Pierre Sommadossi respectfully request the following relief:

1.      A declaration that Dr. Sommadossi and Idenix do not have, and have not had at any time since the commencement of Dr. Sommadossi's sabbatical leave, any obligation to assign any interest in any of the Patent Applications, or in any associated daughter applications or any patents issued or to be issued in the future, to UABRF;

2.      A declaration that (a) all right, title, and ownership interest that Dr. Sommadossi possessed in the Patent Applications, together with any associated daughter applications and any patents issued or to be issued in the future pursuant to the Patent Applications, have been transferred in their entirety to Idenix, and (b) no other party, including but not limited to UABRF, purporting to claim any right, title, or ownership interest in the Patent Applications, together with any associated daughter applications and any patents issued or to be issued in the future pursuant to the Patent Applications, through or on account of Dr. Sommadossi, has any such right, title, or ownership interest;

- 11 -

3.    A declaration that UABRF has waived, and is estopped from asserting, any rights that it may otherwise have had in the Patent Applications, and/or the intellectual property covered by the Patent Applications, by virtue of its conduct preceding January of 2004;

4.    A judgment in favor of Idenix and against UABRF for the damages it has suffered due to UABRF's intentional interference with its contractual relationship with Dr. Sommadossi and its actual and prospective advantageous relations with underwriters and investors;

5.    A judgment in favor of Dr. Sommadossi and of Idenix for UABRF's violations of Massachusetts General Laws, c. 93A, § 11, plus a trebling of such damages and an award of attorneys' fees; and

6.    Such other and further relief as this Court deems just and appropriate.

The Plaintiffs, by their attorneys,

Joan A. Lukey (BBO #307340)
Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6798

OF COUNSEL:

Warren B. Lightfoot
Sara Ford
Lightfoot, Franklin & White, LLC
The Clark Building
400 20th St. North
Birmingham, Alabama 35203

- 12 -

## VERIFICATION

The undersigned Jean-Pierre Sommadossi, individually and as an officer of Idenix Pharmaceuticals, Inc., swears under the pains and penalties of perjury to the truth of the foregoing facts, unless averred on information and belief, in which case he swears to his belief that such facts are truthful and accurate.

_____

Jean-Pierre Sommadossi